IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| MD Shiful Islam, | C/A. No. 2:23-6423-RMG |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| Director of U.S. Citizenship and Immigration Services, | |
| Defendant. | |

Before the Court is Plaintiff's motion for temporary restraining order or preliminary injunction. For the reasons set forth below, the Court denies Plaintiff's motion.

## I.    Background

Plaintiff MD Shiful Islam is a Bangladeshi citizen and national who has lived in the United States since 2013, when he was admitted as a student. (Dkt. No. 1 at 3). BDV Solutions paired Plaintiff with Island Subway, Inc. ("employer"), a Beaufort-based entity. (*Id.*).

The Department of Labor certified employer's PERM application on behalf of Plaintiff on March 18, 2020. Employer filed a Form I-140, Immigrant Petition for Alien Worker (the "I-140") with the certified PERM application in August 2020. (*Id.*). Plaintiff alleges USCIS "improperly rejected" said application and did not give Plaintiff notice, even though he was a "beneficiary" of the I-140 (*Id.* at 4).

Employer re-filed its I-140 and USCIS received it September 18, 2020. (*Id.*). Plaintiff alleges USCIS "exercised its discretion and COVID 19 flexibilities to determine the application was timely" and then approved the I-140. (*Id.*)

On October 29, 2020, Plaintiff filed his I-485, Application to Register Permanent Residence or Adjust Status (the "I-485").

USCIS issued a request for evidence related to the employer's immigrant visa petition and later approved it on June 7, 2021. (*Id.*).

On August 28, 2023, however, USCIS issued employer a Notice of Intent to Revoke ("NOIR") its I-140 approval. (*Id.* at 5). Plaintiff alleges that he did not receive and USCIS did not issue him a copy of the NOIR and that if he had received a copy, he would have responded. (*Id.*). Plaintiff alleges there is a particular employee in the Charleston Field Office of USCIS who dislikes BDV Solutions and is hostile to noncitizen plaintiffs who obtain work through the company. (*Id.* 4-5). Plaintiff alleges USCIS ultimately rejected employer's I-140 because the employer's attorney sent in the I-140 *after* the underlying labor certification had expired. (*Id.*). Plaintiff alleges employer "timely responded to the notice of intent to revoke." (*Id.* at 6).

On October 4, 2023, USCIS revoked Plaintiff's immigrant visa. (*Id.*).

While not explicitly alleged, it appears employer's response to the NOIR was rejected and that USCIS issued a decision, which the employer did not give to Plaintiff "within 33 days that would have allowed him to file an appeal." (*Id.*).

With the denial of his Form I-485, Plaintiff alleges he is accruing unlawful presence, cannot work, and is suffering mental anguish. (*Id.*).

Plaintiff brings 3 claims:

1. I-140 Revocation—Administrative Procedure Act ("APA"). Plaintiff challenges the revocation of his employer's I-140 application. Plaintiff alleges the revocation is due to the USCIS Charleston Field Officer's dislike for BDV Solutions. Plaintiff

2

alleges the revocation also violated the APA because USCIS did not notify Plaintiff that it intended to revoke his employer's I-140.

2. APA—Unlawful Legal Denial of Adjustment of Application. Plaintiff argues that because his employer's I-140 should not have been revoked, his I-485 should never have been rejected.

3. Procedural Due Process. Plaintiff claims he has a "cognizable due process interest in his approved immigrant visa" and that his due process rights were violated because USCIS did not mail him copies of the rejection notice, notice of intent to revoke, and revocation.

On December 11, 2023, Plaintiff filed a motion for a temporary restraining order ("TRO") or preliminary injunction ("PI"). (Dkt. Nos. 3, 10, 14). Defendant opposes. (Dkt. No. 13). Plaintiff appears to move for injunctive relief based on his first and/or third claim. (Dkt. No. 3 at 3, 5) ("The H1B Visa statute reveals a congressional intent to require the Agency to notify the beneficiary and the beneficiary's current employer for revocation on notice for Cap H1B Visas that have already expired on their own terms."); (*Id.*) ("MD has a due process interest in his approved immigrant visa and, thus, at a minimum, he must have a notice and an opportunity to respond."); (Dkt. No. 10 at 1) (stating the Court "need not reach MD's second cause of action to rule on his pending motion.").

Plaintiff's motion is fully briefed and ripe for disposition.

**II.     Legal Standard**

The substantive standards for granting a request for a temporary restraining order and entering a preliminary injunction are the same. *See Virginia v. Kelly*, 29 F.3d 145, 147 (4th Cir. 1994) (applying preliminary injunction standard to a request for temporary restraining order).

3

Both "are intended to meet exigent circumstances[.]" *Ideal Toy Corp. v. Plawner Toy Mfg. Corp.*, 685 F.2d 78, 84 (3d Cir. 1982). It "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). "[T]he party seeking [either of these types of relief] must prove [its] own case and adduce the requisite proof, by a preponderance of the evidence, of the conditions and circumstances upon which he bases the right to and necessity for injunctive relief." *Citizens Concerned for Separation of Church & State v. City of Denver*, 628 F.2d 1289, 1299 (10th Cir. 1980).

A temporary restraining order or a preliminary injunction should issue only when the plaintiff can "[1] establish that [it is] likely to succeed on the merits, [2] that [it is] likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that [injunctive relief] is in the public interest." *Winter*, 555 U.S. at 20, 129 S.Ct. 365. The burden is on the party seeking injunctive relief to show it is entitled to the relief, not the burden of the other party to show the movant is not entitled. *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 443, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974).

"[A]ll four requirements must be satisfied." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009). Thus, even a strong showing of likely success on the merits cannot compensate for failure to show likely injury. *Winter*, 555 U.S. at 21-22, 129 S.Ct. 365. And, irreparable injury alone is insufficient to support equitable relief. *See id.* at 23, 129 S.Ct. 365 (holding irreparable injury was likely to occur, but holding injunctive relief was improper because of the burden on the government and impact on public interest). In other words, "[a temporary restraining order or a] preliminary injunction shall be granted only if the moving party clearly establishes entitlement." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017).

"Given [the] limited purpose [of a temporary restraining order and a preliminary injunction], and given the haste that is often necessary ..., [they are] customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). "Because [the] proceedings are informal ones designed to prevent irreparable harm before a later trial governed by the full rigor of usual evidentiary standards, district courts may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted." *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 725–26 (4th Cir. 2016), *vacated and remanded on other grounds*, ––– U.S. –––, 137 S. Ct. 1239, 197 L.Ed.2d 460 (2017).

### III.     Analysis

Defendant's principal argument in opposition to Plaintiff's motion is that this Court lacks subject mater jurisdiction because the "gravamen of Plaintiff's complaint is a request for this Court to review USCIS's decision to revoke Plaintiff's [employer's] I-140 petition." (Dkt. No. 13 at 1).

*Polfliet v. Cuccinelli,* 955 F.3d 277 (4th Cir. 2020) is instructive. In *Polfliet*, the Fourth Circuit affirmed a district court's dismissal of a case wherein a plaintiff alleged USCIS unlawfully revoked his I-130 family visa petition. Under the Adam Walsh Act, USCIS denied Polfliet's petition on behalf of his wife's son. *See* 8 U.S.C. § 1154(a)(1)(A)(viii) (barring persons convicted of certain offenses against minors from filing family visa petitions on behalf of any beneficiary unless the Secretary of the Department of Homeland Security determines "in the Secretary's sole and unreviewable discretion" that the petitioner poses "no risk" to the beneficiary).

The Fourth Circuit held—like "almost every other circuit"—that 8 U.S.C. § 1155's "plain language"[1] "confers discretion upon the Secretary to revoke visa petitions." *Id.* at 383. Thus, under § 1252(a)(2)(B) and (ii), review by the district court was not permitted. § 1252(a)(2)(B) and (ii). *Id.*[2]

The Fourth Circuit also addressed plaintiff's contention that even if § 1155 is discretionary, "courts have jurisdiction to review constitutional challenges to a visa revocation." *Id.* at 383. The court rejected plaintiff's argument.

> We addressed the effect of § 1252(a)(2)(B)(ii) on constitutional claims in *Lee v. USCIS*, in which the plaintiff challenged an adjustment of status regulation, ostensibly on purely legal grounds. 592 F.3d 612, 613 (4th Cir. 2010). The plaintiff noted that in the statutory scheme of the INA, § 1252(a)(2)(B) applies "except as provided in subparagraph (D)." Then, § 1252(a)(2)(D) states, "[n]othing in subparagraph (B) ... shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." The *Lee* plaintiff argued that these provisions required us to review his legal challenges to the regulation. 592 F.3d at 620.
>
> We disagreed, holding that, "[t]o the extent Congress decided to permit judicial review of a constitutional or legal issue bearing upon the denial of adjustment of status, it intended for the issue to be raised to the court of appeals *during removal proceedings*." *Id.* (emphasis in original). While the present case did not arise directly from a denial of adjustment of status, the underlying issue—the effect of § 1252(a)(2)(D)—is the same. *See Roland*, 850 F.3d at 630 (applying *Lee* where a plaintiff brought a constitutional challenge to an Adam Walsh Act risk determination). Because no removal proceeding is pending against Kimiki, the § 1252(a)(2)(D) exception is inapplicable.

---

[1] "The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title. Such revocation shall be effective as of the date of approval of any such petition."

[2] "Notwithstanding any other provision of law (statutory or nonstatutory) ... and except as provided in subparagraph (D) ... no court shall have jurisdiction to review — ... any other decision or action ... the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title."

>Appellants further argue that they cannot raise their constitutional challenges during removal proceedings because the visa petition revocation would be collateral to those proceedings and therefore not within the scope of a petition for review. Moreover, as Appellants note, there are no removal proceedings from which to petition—although USCIS revoked the petition years ago, it has never taken steps to remove Kimiki. Thus, Appellants contend if their constitutional claims are not heard now, they will never be heard. However, the plaintiff in *Lee* likewise had not been placed in removal proceedings. 592 F.3d at 614. And, while Appellants may doubt whether they may bring these claims in a removal proceeding, that is what the statutory framework and binding precedent require. USCIS has argued in its briefing below, in its briefing here, and at oral argument that, if Kimiki is placed in removal proceedings, he may raise his claims at that time. We agree.

*Id.* at 383-84.

Here, to the extent Plaintiff challenges the reasons for which USCIS denied employer's I-140, *Polfliet* bars review of Plaintiff's claims. *See* § 1155 (granting Secretary discretion to revoke the approval of any petition approved by him under §1154); §1252(2)(B)(ii) (precluding judicial review by this Court); *Nouritajer v. Jaddou*, 18 F.4th 85, 89 (2d Cir. 2021) (noting that "[a]lthough Plaintiffs attempt to avoid this jurisdictional bar by characterizing their claims as 'procedural' challenges on appeal, the use of that label does not control the jurisdictional question" and rejecting plaintiffs' arguments because "the SAC makes no allegation that the agency failed to comply with any of the requisite procedures prior to revoking an approved visa petition, which are set forth in 8 C.F.R. § 205.2"); *Doe v. McAleenan*, 926 F.3d 910, 915 (7th Cir. 2019) (recognizing that "[c]ourts may review identifiable procedural rulings that don't implicate a petition's merits" but not challenges to "discretionary revocations on nominally 'procedural' grounds"); *Id.* (noting that plaintiffs cannot end-run this jurisdictional bar "by artfully framing a challenge to the agency's substantive decision as a procedural claim"); (Dkt. No. 14 at 2) (admitting "8 U.S.C. § 1252(a)(2)(B)(ii) precludes review over revocation decisions" but arguing the Court has "jurisdiction to review procedural challenges to immigrant visa revocations").

As for Plaintiff's procedural argument, it boils down to the allegation that USCIS did not send him, the beneficiary of his employer's I-140, a copy of the NOIR. (Dkt. No. 1 ¶ 52) (Dkt. No. 14 at 3) ("Here, MD seeks only to challenge the *procedures* used in revocation of his immigrant visa. If USCIS was not required to issue him notice of the application's initial rejection, the intent to revoke, or the revocation, MD loses.").

> The INA allows for a certain number of immigrants to receive permanent residency through employer sponsorship. For an employer-sponsored immigrant who is already in the United States, there is a three-part process for receiving permanent residency. First, the Department of Labor (DOL) must issue an alien labor certification to the immigrant's employer. (This certification states that the labor market can absorb the immigrant without affecting other workers' wages. *See* 8 U.S.C. § 1182(a)(5)(A)(i).) Second, USCIS must approve the employer's immigrant visa petition (Form I–140). *See* 8 U.S.C. § 1154(a)(1)(F); 8 C.F.R. § 204.5(a). Third, the immigrant must obtain approval of her own 1–485 application for adjustment of status. 8 U.S.C. § 1255(a); 8 C.F.R. § 204.5(n)(1).

*See Mantena v. Johnson*, 809 F.3d 721, 724–25 (2d Cir. 2015); *see also* § 1155 (granting the Secretary discretion to, "at any time, for what he deems good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title").

Because of significant employment-based immigrant visa backlogs (delays in the processing of I-485 applications), Congress enacted a "portability provision" to provide long-delayed alien worker green card applicants with a certain amount of "job flexibility." *See* the American Competitiveness in the Twenty-First Century Act of 2000 ("AC 21"), Pub. L. No. 106-313, §§ 101–16, 114 Stat. 1251, 1251–62 (codified at 8 U.S.C. §§ 1154(j), 1182(a)(5)(A)(iv)). Before Congress enacted this provision, an alien worker, whose employer completed steps one and two, as described above, but who had his or her step three delayed in a processing backlog, could not change jobs without starting the entire visa petitioning process again from step one with the new employer. By contrast, the portability provision permits certain alien workers who are the

named beneficiaries of an employer's approved I-140 petition to "port" from their original petitioning employer to a different employer in the same or similar occupation to maintain their eligibility for permanent residency based on the originally approved I-140 petition. *See* 8 U.S.C. §§ 1154(j), 1182(a)(5)(A)(iv)). To be eligible to "port," the noncitizen worker must: (1) be the beneficiary of an approved I-140 petition; (2) have their I-485 application pending with USCIS for at least 180 days; and (3) be "porting" to work with a different employer in a job that is the same or a similar occupational classification as the job for which the original I-140 petition was filed. *See Herrera v. USCIS*, 571 F.3d 881, 887 (9th Cir. 2009) (citing 8 U.S.C. § 1154(j)); *see also Khalil v. Hazuda*, 833 F.3d 463, 467 (5th Cir. 2016) (discussing the requirements for job portability). However, for the original I-140 petition to remain as a valid basis for the noncitizen worker to "port" to a new employer and obtain permanent residence, it must have been valid—that is, approvable by USCIS—from the start. *See id.* Importantly, the "portability" provision of AC 21 does not alter USCIS's congressionally mandated, discretionary authority under 8 U.S.C. § 1155 to revoke an I-140 petition "at any time," for what the agency deems to be "good and sufficient cause." *See Herrera*, 571 F.3d at 889.

USCIS has promulgated regulations regarding revocation. Eight C.F.R. § 205.2 states that "[r]evocation of the approval of a petition or self-petition under paragraph (a) of this section will be made only on notice to the petitioner or self-petitioner." *Id.* (b). The "petitioner or self petitioner may appeal the decision to revoke the approval[.]" S*ee also* 8 C.F.R. § 103.3(a)(1)(iii)(B), (a)(2)(i) (permitting only an "affected party," which is defined to exclude "the beneficiary of a visa petition," to file administrative appeals); *Id.* § 103.8(a)(1)(i) (explaining that "routine service" of "notices, decisions, and other papers ... in administrative proceedings" entails "mailing the notice ... to the affected party").

In the context of individuals attempting to "port," the Second and Seventh Circuits have held that beneficiaries or their new employers were entitled to the notice regulations promised only to original employers. *See Khedkar v. U.S. Citizenship & Immigr. Servs.*, 552 F. Supp. 3d 1, 15 (D.D.C. 2021) ("Before the portability provision came along, an I-140 beneficiary was stuck with his petitioning employer for as long as he wanted to rely on the employer's petition during the I-485 application process for permanent residency. Due to the limited number of available permanent residency visas, he could be trapped for years. Still, the beneficiary's forced relationship with his petitioning employer 'also meant that notice to the original employer would adequately serve to inform the alien employee.'"); *Mantena v. Johnson*, 809 F.3d 721, 732 (2d Cir. 2015); *Musunuru v. Lynch*, 831 F.3d 880, 888–91 (7th Cir. 2016).

Here, Plaintiff is not attempting to "port" his employment, thus the logic of the above cited cases for providing Plaintiff notice as a beneficiary is inapplicable. Accordingly, Plaintiff can point to no authority requiring he receive notice as a beneficiary of USCIS's notice of intent to revoke an I-140—or for that matter an I-140's initial rejection or revocation. Thus, Plaintiff's APA claim fails. *Cf. Khedar*, 552 F. Supp. 2d at 17 ("What matters is that USCIS regulations, as written, simply do not make sense in the regime the portability provision created. They require the agency to continue to send requests for evidence to a petitioning employer even after the would-be beneficiary has decided to leave. And they do not allow anyone but the indifferent prior employer to appeal unfavorable decisions. The Court therefore holds that, when an I-140 petition is pending before USCIS and the agency receives notice that the beneficiary wants to move to a new employer, USCIS acts inconsistently with the portability provision if it continues to treat only the original employer as a party to the petition adjudication proceeding."); *Id.* at 18 ("The Court will go only so far as to say that the I-140 beneficiary who attempts to port should be a party to petition

10

adjudication proceedings—at least when it comes to immigrants applying for visas reserved for multinational executives and managers. For an immigrant to earn one of those visas, the I-140 petition must show that he was a manager or executive at his original employer for at least one of the three years before he immigrated and that he would have continued to be a manager or executive for the original employer in the United States.").

Accordingly, because this Court lacks subject matter jurisdiction to hear Plaintiff's challenges to the revocation of employer's I-140 and because Plaintiff's APA claim is not likely to succeed on the merits, Plaintiff's motion for TRO or PI is denied.

### IV.    Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for TRO or PI (Dkt. No. 3).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

January 17, 2024
Charleston, South Carolina